76479. CINCINNATI INSURANCE COMPANY v. PAGE et al.

(374 SE2d 768)

POPE, Judge.

Following a multi-car collision, appellant Cincinnati Insurance Company filed an action seeking a declaratory judgment to determine the amount of coverage available under a policy providing automobile liability insurance to appellee James G. Page and his family. A suit had previously been brought against Page by appellee Ray Anthony Couch for damages arising from the collision, and both Couch and Cincinnati filed motions for summary judgment in the declaratory judgment action. Interlocutory appeal was granted from the trial court's order awarding summary judgment to Couch and denying Cincinnati's motion for summary judgment.

The controversy involved the limits of liability, as shown on the declarations page of the policy, and reprinted below:

| COVERAGES | LIMITS OF LIABILITY | | ANNUAL PREMIUM | ANNUAL PREMIUM | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|---|---|
| BODILY INJURY LIABILITY | $ 300,000 | Each Person | #2 | | | |
| | $ SINGLE | Each Occurrence | $ 67.00 | $ | $ | $ |
| PROPERTY DAMAGE LIABILITY | $ LIMIT | Each Occurrence | $ | $ | $ | $ |
| PERSONAL INJURY PROTECTION | $ 50,000 | | $ 26.00 | $ | $ | $ |
| MEDICAL PAYMENTS | $ | Each Person | $ | $ | $ | $ |
| LIMITED MEDICAL PAYMENTS | $ | | $ | $ | $ | $ |
| COMPREHENSIVE | ACV | | $ | $ | $ | $ |
| COLLISION OR UPSET (ACV-ACTUAL CASH VALUE) | ACV less $ | deductible | 0 | $ | $ | $ |
| TOWING AND LABOR COSTS | $ 25.00 | per disablement | $ 2.00 | $ | $ | $ |
| FAMILY PROTECTION | Statutory Limits 15/30/10 | | $ 6.00 | $ | $ | $ |
| | | | $ | $ | $ | $ |
| | | TOTAL PREMIUM | 101.00 | | | |

Cincinnati argued on its motion for summary judgment, as it does on appeal, that typewritten words of a contract are entitled to more consideration than words printed on the form, and must govern over any conflicting printed ones. OCGA § 13-2-2 (7). Thus, it insists that the policy was intended to provide total aggregate coverage of $300,000 per occurrence, $300,000 being the single limit of the policy

including both bodily injury and property damage liability. However, the trial court found that the insurer's placement of $300,000 beside the term "Each Person," and the manner in which the term "SINGLE LIMIT" had been typed in on the declaration, created an uncertainty of meaning as to the provisions of coverage. Because of this ambiguity, the court determined that the policy must be construed most strongly against the insurer and in favor of the insured. OCGA § 13-2-2 (5); see *Coren v. Puritan Ins. Co.*, 184 Ga. App. 667 (2) (362 SE2d 380) (1987).

The trial court reasoned that when the endorsements and the declaration were read together, the $300,000 could be construed as being the limit for any one person's damages and "SINGLE LIMIT" construed as meaning that the only limit of liability was for "Each Person." Therefore, because the endorsement addressed a limit both for each person and each accident, but a numerical value was set only for the "Each Person" limit, the insured could reasonably expect that the "Each Accident" limit would have been similarly expressed by a numerical term if such a limit were intended. The court further noted that Cincinnati failed to provide a definition or explanation of the critical term "Single Limit" anywhere within the policy, even though its policy and endorsement forms approved and on file with the State Commissioner of Insurance pursuant to OCGA § 33-24-9 contemplated the importance of assuring clarity with respect to single limit liability coverage. The trial court also rejected Cincinnati's "*expressio unius est exclusio alterius*" argument on the ground that "the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. [Cit.]" *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291, 295 (265 SE2d 102) (1980). Based on the above considerations, the trial court concluded that the insurance contract was ambiguous and declared as a matter of law that it provided a limit of liability of $300,000 per person.

Appellant enumerates as error the grant of summary judgment to appellee Couch and the denial of its motion, urging that the policy was not ambiguous and the trial court applied an unreasonable and strained construction in finding that it provided coverage in the amount of $300,000 per person. It further assigns error in the trial court's consideration of extraneous documents.

" 'We begin with the proposition that an insurance policy, even when ambiguous, is to be construed by the court. . . .' In making an assessment we consider the pertinent legal principles, which the trial court also applied. Because insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured. [Cit.] 'Exceptions,

limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.' [Cit.] In brief, although the cardinal rule of construction is to ascertain the intention of the parties, if the language is susceptible to two different constructions the one most favorable to the insured will be adopted. [Cit.]" (Indention omitted.) *St. Paul &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (1) (358 SE2d 925) (1987).

We can in no way disagree with the trial court's conclusion that the manner in which the term "Single Limit" was typed upon the declaration form created an uncertainty of meaning as to the provisions of coverage. And, as the trial court also correctly ruled, the failure of the insurer to provide a definition or explanation of the critical term "Single Limit" within the policy authorized the court to consider extrinsic evidence to resolve the ambiguity. Thus the court properly considered evidence that by attaching the provisions and endorsements that had been previously submitted to and approved by the State Commissioner of Insurance pursuant to OCGA § 33-34-9, Cincinnati could have issued a policy which unambiguously stated that $300,000 was the combined limit for both bodily injury and property damage for each accident; and that in failing to do so, Cincinnati violated its own underwriting guidelines. The burden is on the insurer to make its intent clear and unmistakable and to show explicitly any exceptions to coverage. *Capital Ford Truck Sales v. United States Fire Ins. Co.*, 180 Ga. App. 413, 418-419 (349 SE2d 201) (1986); accord *MAG Mut. Ins. Co. v. Gatewood*, 186 Ga. App. 169 (1) (367 SE2d 63) (1988).

"There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity. *Travelers Ins. Co. [v. Blakey*, 255 Ga. 699 (342 SE2d 308) (1986)]." *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986). The trial court here found as a matter of law, after utilizing this procedure, that the insurance policy provided a limit of liability of $300,000 per person. However, our own review of the policy and our application of the pertinent rules of construction convinces us that because of the placement of the term "$300,000 Single Limit" upon the endorsement, an ambiguity remains as to whether it pertains solely to bodily injury liability, or solely to property damage liability, or encompasses both; it is likewise unclear whether the declaration applies to each person or to each accident. Hence the language is susceptible to more than two different con-

structions, and there is no one construction most favorable to the insured which can be adopted as a matter of law. "Accordingly, the grant of summary judgment to [appellee Couch] must be reversed and this issue submitted to the jury for resolution. [Cits.]" *International Business Investments v. Archer Motor Co.*, 187 Ga. App. 97, 99 (369 SE2d 268) (1988).

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Benham, J., concur.*

DECIDED OCTOBER 5, 1988 —
REHEARING DENIED OCTOBER 21, 1988

*William S. Goodman, Judy F. Aust*, for appellant.
*Robert D. Hocutt, Alan B. Gordon, Yehuda Smolar, Stanley T. Snellings, Rhodes H. Jordan, Douglas F. Aholt*, for appellees.